JUDGE SWEET

Andrew M. Calamari
Sanjay Wadhwa
Wendy Tepperman
Todd Brody
Melanie MacLean
Attorneys for Plaintiff
U.S. SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-0080 (Brody)

15 CV 4867



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>          - against -<br><br>HAIJIAN LUO,<br><br>                              Defendant. | 15 Civ.<br><br>**COMPLAINT**<br><br>ECF CASE |

Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint against defendant Haijian Luo ("Luo" or "Defendant"), alleges as follows:

## SUMMARY

1.  This is an insider trading case involving suspicious and highly profitable trading by Defendant Luo in the securities of Qihoo 360 Technology Co., Ltd. ("Qihoo" or "the Company") prior to the Company's June 17, 2015 announcement that it had received a buyout offer from its Chairman and CEO and a consortium of other affiliates (the "buyout offer").

1

Following the announcement of the buyout offer, the share price of Qihoo increased dramatically, opening approximately 9% higher than the previous day's closing price.

2. Defendant is a Chinese national who traded through a U.S. brokerage account. Defendant's remarkably timed purchase of Qihoo call options shortly before news of the buyout offer was disclosed resulted in profits of approximately $1,019,537. Defendant, on information and belief, purchased Qihoo options while in possession of material, nonpublic information concerning the buyout offer.

3. The Commission brings this emergency action in order to freeze the proceeds of the Defendant's Qihoo trades until the circumstances surrounding the trades can be explored, and to obtain other relief. The Commission is concerned that, absent a freeze, all of the proceeds of these suspicious trades will be transferred outside of the United States where they will be beyond the jurisdiction and reach of United States courts. Indeed, on June 22, 2015, Luo instructed his brokerage firm to wire $600,000 of the proceeds of his Qihoo trades to a bank account in Singapore.

## NATURE OF THE PROCEEDINGS AND REQUESTED RELIEF

4. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)]. The Commission seeks a permanent injunction against the Defendant, enjoining him from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful insider trading activity set forth in this Complaint, together with prejudgment interest, and civil penalties pursuant to Section 21A of the

Exchange Act [15 U.S.C. § 78u-l]. The Commission seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. § 78u(d), 78u(e), and 78aa].

6. Venue lies in this Court pursuant to Section 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. § 78u(d), 78u-1, and 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York and elsewhere, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails, or the facilities of a national securities exchange. Qihoo's American Depository Shares ("ADSs") are listed on the New York Stock Exchange ("NYSE") under the symbol QIHU. The Company's options contracts are also listed on the NYSE.

## DEFENDANT

7. **Luo**, age 33, is a citizen of the People's Republic of China and a resident of Guangzhou, China. Luo is the CEO of 4399 Co., Ltd., an online game company that provides single, multiplayer, and children's games as well as animation through the internet.

## FACTS

### Qihoo 360 Technology Co., Ltd.

8. Qihoo is a Cayman Islands entity with its principal executive office in Beijing, China. On June 9, 2005, the Company was incorporated in the Cayman Islands as an exempted limited liability company. The Company conducts business through its wholly-owned

3

subsidiaries and affiliated entities, including Qizhi Software, Tianjin Qisi Technology Co., Ltd., and Qifei Xiangyi.

9. Qihoo is a leading internet company in China. As of June 2014, the Company reported approximately 500 million active PC users and over 640 million mobile users. The Company reports that it is the No. 1 provider of internet and mobile security products and the No. 2 PC search provider in China.

10. On March 30, 2011, Qihoo listed its ADSs on the NYSE. Qihoo completed an initial public offering of ADSs on April 4, 2011. Qihoo's ADSs trade under the symbol QIHU.

**The June 17, 2015 Announcement**

11. On June 17, 2015, Qihoo issued a press release providing that "its board of directors (the "Board") has received a preliminary non-binding proposal letter, dated June 17, 2015, from Mr. Hongyi Zhou, chairman and chief executive officer of the Company, CITIC Securities Co. Ltd. or its affiliates, Golden Brick Capital Private Equity Fund I L.P., China Renaissance Holdings Limited or its affiliates and Sequoia Capital China I, L.P. and/or its affiliates, to acquire all of the outstanding Class A and Class B ordinary shares of the Company not owned by them or their affiliates, including Class A ordinary shares represented by American depositary shares (the "ADSs", each two representing three Class A ordinary shares), for $51.33 in cash per Class A or Class B ordinary share, or $77.00 in cash per ADS."

12. The news of the buyout was received positively by the market. Qihoo's ADSs had closed on the NYSE on June 16 at $66.05. The press release concerning the buyout was issued while the market was closed in the United States. At the start of trading on Wednesday, June 17, 2015, Qihoo ADSs opened higher at $72.08 and rose to $72.65 before closing at $70.15.

Commenting on this activity, thestreet.com stated in a headline: "Qihoo 360 Technology Stock Soaring on Acquisition Offer."[1]

**Luo's Trading in Qihoo Securities**

13.  Luo opened an account with the San Francisco office of Credit Suisse Securities (USA) LLC ("Credit Suisse") on March 6, 2015. In his account opening information and agreement, Luo represented that he was the CEO of 4399 Co., Ltd. and had an annual income of $200,001 to $500,000, a net worth of $10,000,001 to $25,000,000, and liquid assets of $5,000,000 to $10,000,000.

14.  Luo did not fund his account until May 18, 2015—one day before he began trading in QIHU securities—when he wired $720,000 into his Credit Suisse account.

15.  The only securities trading that took place in Luo's Credit Suisse account prior to the announcement of the buyout offer was the unsolicited purchase of QIHU call options. A call option is a contract that gives the buyer the right to buy shares of an underlying stock at the strike price (discussed below) for a specified period of time. On May 19, 2015, Luo purchased 2,250 QIHU call options for a total amount of $711,778.

16.  The call options that Luo purchased were "out of the money." This means that the actual stock price on the date when Luo purchased the options was lower than the strike price at which the options could be exercised. When Luo purchased the call options on May 19, 2015, the underlying security was trading in a range of $57.97 (low) to $59.89 (high) and closed at $58.76. The call options that Luo purchased had strike prices ranging from $60.50 to $65.00. Moreover, the call options that Luo purchased were relatively short term: 800 of the options that

---

[1] http://www.thestreet.com/story/13189738/1/qihoo-360-technology-qihu-stock-soaring-on-acquisition-offer.html

5

he purchased had expiration dates of June 19, 2015; 1,250 of the options that he purchased had expiration dates of July 17, 2015; and 200 of the options that he purchased had expiration dates of September 18, 2015. These short-term, out of the money call options were extremely speculative and represented a very optimistic view of the company.

17. All of the call options that Luo purchased became in the money as of June 11, when the stock traded at a high of $67.00 and closed at $65.95. Luo did not sell his call options until after the June 17 announcement, when he liquidated his entire position, including those call options not expiring until July 17 and September 18.

18. Following the announcement of the buyout offer, all of Luo's options were sold for a total value of approximately $1,731,315, compared to an initial investment of $711,778, resulting in a realized profit of approximately $1,019,537.

19. Luo, as the CEO of a Chinese internet gaming company, would naturally have had relationships with individuals at Qihoo one of the largest internet companies in China, which is also involved in the online video game business. Indeed, Luo presented at conferences with individual(s) from Qihoo.

20. On June 22, 2015, Luo transmitted a wire transfer instruction to Credit Suisse to transfer $600,000 of the proceeds of the Qihoo trades to a bank account in Singapore.

**Defendant's Possession of, and Trading on, Material Nonpublic Information**

21. Upon information and belief, at the time Defendant purchased Qihoo options, as alleged above, he was in possession of material, nonpublic information about the buyout offer. Defendant: (a) knew, recklessly disregarded, or should have known that his trading was in breach of a fiduciary duty, or obligation arising from a similar relationship of trust and confidence,

owed to the shareholders of Qihoo, or to the source from whom he received or obtained the material, nonpublic information; and/or (b) knew, recklessly disregarded, or should have known, that the material, nonpublic information about the buyout offer that had been obtained by him or conveyed to him was disclosed or misappropriated in breach of a fiduciary duty, or similar relationship of trust and confidence.

22. Upon information and belief, any and all material, nonpublic information that Defendant received concerning the buyout that was disclosed to him by any person was tipped by such person with the expectation of receiving a benefit, such person did in fact receive a benefit, and Defendant knew of such benefit.

## CLAIM FOR RELIEF

**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**

23. The Commission realleges and incorporates by reference paragraphs 1 through 22, as though fully set forth herein.

24. By virtue of the foregoing, Defendant, singly or in concert with others, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

25. By virtue of the foregoing, Defendant, directly or indirectly, violated, and unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## RELIEF SOUGHT

**WHEREFORE**, the Commission respectfully requests that this Court enter a show cause order and an order temporarily and preliminarily freezing Defendant's assets in the account in which the trading described in this Complaint occurred (with other associated relief), and enter a Final Judgment:

### I.

Permanently restraining and enjoining the Defendant, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Ordering Defendant to disgorge, with prejudgment interest, all illicit trading profits or other ill-gotten gains received as a result of the conduct alleged in this Complaint;

### III.

Ordering Defendant to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u-1]; and

## IV.

Granting such other and further relief as this Court may deem just and proper.

Dated: June 23, 2015

Respectfully submitted,

*Sanjay Wadhwa*
Sanjay Wadhwa

Andrew M. Calamari
Wendy B. Tepperman
Todd Brody
Melanie A. MacLean
Counsel for Plaintiff
U.S. Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0080 (Brody)